**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PARTS GEEK, LLC, | : |
|  | : |
|     Plaintiff, | : |
|  | : |
|     v. | : |
|  | : |
| U.S. AUTO PARTS NETWORK, | : |
| INC., et al., | : |
|  | : |
|     Defendants. | : |

CIVIL ACTION NO. 09-5578 (MLC)

**MEMORANDUM OPINION**

**COOPER, District Judge**

The plaintiff, Parts Geek, LLC ("Parts Geek") brought this action against the defendants, U.S. Auto Parts Network, Inc. ("USAP") and Google, Inc. ("Google"), asserting claims for (1) trademark/service mark infringement under the Lanham Act, 15 U.S.C. § ("Section") 1114(1), against both defendants, (2) contributory trademark/service mark infringement against Google, (3) vicarious trademark/service mark infringement against Google, (4) false representation under the Lanham Act against both defendants, (5) trademark/service mark dilution under the Lanham Act, 15 U.S.C. § 1125(c), against both defendants, (6) trademark infringement under New Jersey law against both defendants, (7) unfair trade practice under N.J.S.A. § 56:8-2 against both defendants, (8) negligence against Google, (9) violation of both the federal and New Jersey Racketeering Influenced and Corrupt Organizations Acts ("RICO"), 18 U.S.C. § 1961 et seq. and

N.J.S.A. § 2C:41-1 et seq., against USAP, and (10) computer fraud against USAP, in violation of 18 U.S.C. § 1030(a)(2)(C).  (Dkt. entry no. 1, Compl. at 17-31.)

Google now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, to transfer the action to the Northern District of California pursuant to 28 U.S.C. § 1404(a), based on an agreed-upon forum selection clause.  (Dkt. entry no. 14, Google Mot. to Dismiss.)  Google moves in the alternative to dismiss Counts I-III and V-VII of the Complaint as against it pursuant to Rule 12(b)(6) because Parts Geek lacks standing to enforce the trademark in question.  (Dkt. entry no. 14, Google Br. at 20.) USAP joins the part of Google's motion seeking to transfer or dismiss, and also moves separately to dismiss the Complaint as against it for lack of standing and for failure to plead a viable RICO or computer fraud claim.  (Dkt. entry no. 16, USAP Mot. & USAP Br. at 1.)   Parts Geek has opposed the separate motions. (Dkt. entry no. 18, Parts Geek Opp'n to Google Mot.; dkt. entry no. 25, Parts Geek Opp'n to USAP Mot.)  The Court determines the separate motions on the briefs without an oral hearing, pursuant to Rule 78(b).  For the reasons stated herein, the Court will grant the part of Google's motion seeking to transfer to the Northern District of California, deny without prejudice the part of the Google's motion seeking, in the alternative, dismissal of

certain claims under 12(b)(6), grant USAP's motion insofar as it joins Google's motion to transfer venue, and deny without prejudice USAP's motion to dismiss the Complaint insofar as asserted against it.

### BACKGROUND

Parts Geek, a limited liability company organized under the laws of New Jersey with its principal place of business in New Jersey, sells auto parts in the United States. (Compl. at ¶¶ 1, 9.)  USAP, a Delaware corporation with its principal place of business in California, also sells auto parts and directly competes with Parts Geek.  (Id. at ¶ 10.)  Google is a Delaware corporation with its principal place of business in California. (Id. at ¶ 11.)

Parts Geek, by and through its predecessor in interest, began adopting and using the Parts Geek trade name, service mark, logo, and title in April 1999.  (Id. at ¶ 20.)  Parts Geek's predecessor in interest registered the service mark "Parts Geek" with the U.S. Patent and Trademark Office on June 12, 2007.  (Id. at ¶ 23 & Ex. A, Cert. of Registration No. 3,250,569.)  Parts Geek conducts a substantial amount of its business through the Internet, particularly through its website, www.partsgeek.com. (Compl. at ¶ 37.)  USAP sells auto parts from, inter alia, the websites www.autopartswarehouse.com and www.partstrain.com.  (Id. at ¶ 38.)

3

Google operates a popular Internet search engine that presents both "organic search results" automatically determined by an algorithm, and "Sponsored Links," which are generated in part by Google's AdWords program. (Id. at ¶¶ 49-56.) Google's AdWords program allows advertisers to select certain "keywords" that will trigger the "Sponsored Links"; the advertisers pay Google each time a web user clicks on its keyword-targeted "Sponsored Link" on a search results page. (Id. at ¶¶ 56-57, 70.)[1] Parts Geek contends that with regard to registered trademarks or service marks, Google's AdWords program can create confusion by using the mark either as a keyword trigger, or as part of the advertisement itself. (Id. at ¶ 59.)

Parts Geek alleges that Google has sold USAP the "right" to use the words "Parts Geek" as part of Google's AdWords program such that some of the "Sponsored Links" that appear after searching for the term "Parts Geek" or some part of the website name "www.partsgeek.com" misleadingly direct the web user to the websites of companies that compete with Parts Geek, including USAP. (Id. at ¶¶ 62-66.) Parts Geek alleges specifically that Google has allowed Parts Geek's competitors to use the Parts Geek mark as a keyword trigger in its AdWords program and that Parts

---

[1] Google explains, in reference to the allegations in ¶¶ 56-57 of the Complaint, that the AdWords program "offers businesses the ability to bid on certain keywords. . . . [T]he advertiser then pays Google each time a user clicks on its Sponsored Link." (Google Br. at 3.)

Geek's competitors, including USAP, have "improperly used Google's programming to create 'Sponsored Links' and other advertisements that either use terms that are confusingly similar to the Parts Geek Mark or are formatted in ways that are likely to cause confusion with Parts Geek and/or with the Parts Geek Mark." (Id. at 67-68.)  Parts Geek contends that USAP's use of the Parts Geek mark as keywords or advertising text in Google's AdWords program creates consumer confusion and is likely to cause web users to discontinue their search for Parts Geek's website after being diverted to USAP or a third party's website.  (Id. at ¶¶ 72-73.)

Google points to the allegations contained in Parts Geek's negligence claim against Google, which state that Parts Geek also has an advertising agreement with Google and that "Google has a duty to use due care regarding the protection of [Parts Geek's] trademark and business information by reason of its advertising agreements and published policies."  (Id. at 144-45; Google Br. at 3.)  Google explains that both USAP and Parts Geek participate in Google's AdWords program and thus have both entered into an advertising contract with Google.  (Google Br. at 3 & Joseph Decl., Ex. 1, Google, Inc. Advertising Program Terms ("AdWords Contract").)[2]

---

[2] Google cites <u>Sonnenberg v. Prospect Park Fin. Corp.</u>, No. 91-435, 1991 WL 329755, at *7 (D.N.J. Aug. 20, 1991), and <u>Brill v. Burlington Northern, Inc.</u>, 590 F.Supp. 893, 895 n.2 (D. Del.

Parts Geek executed the AdWords Contract on August 29, 2006, and its AdWords account remains active.  (Joseph Decl. at ¶ 6.) The AdWords Contract provides the terms governing Parts Geek's participation in the AdWords program.  (AdWords Contract at 1.) The section of the AdWords Contract titled "Miscellaneous" states:

> THE AGREEMENT MUST BE CONSTRUED AS IF BOTH PARTIES JOINTLY WROTE IT AND GOVERNED BY CALIFORNIA LAW EXCEPT FOR ITS CONFLICTS OF LAWS PRINCIPLES.  ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE GOOGLE PROGRAM(S) SHALL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA, AND GOOGLE AND CUSTOMER CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.

(AdWords Contract at ¶ 9.)  Google urges the Court to either dismiss the Complaint based on the above forum selection clause, or transfer the action to the Northern District of California, which includes Santa Clara County.  (Google Br. at 5.)[3]

_____

1984), for the proposition that because Parts Geek referred to the AdWords Contract in the Complaint, the Court may properly consider the document as part of the pleadings.  (Google Br. at 4.)  The Court agrees, given that Parts Geek does not contest the authenticity of the AdWords Contract.  (Parts Geek Opp'n to Google's Mot. at 1.)  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] The Court takes judicial notice that the San Jose Division of the Northern District of California is located in Santa Clara County.  See Feldman v. Google, Inc., 513 F.Supp.2d 229, 244 (E.D. Pa. 2007) ("The federal courthouse for the San Jose Division of the Northern District of California is located in the city of San Jose.  San Jose is the county seat of government for Santa Clara County.  The federal courthouse therefore is located undisputably in Santa Clara County.").

**DISCUSSION**

## I.    12(b)(6) Motion to Dismiss Standard

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine, whether under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, a "complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- that the 'pleader is entitled to relief.'"  Iqbal, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)).

When there exists "a valid forum selection clause designating a particular forum for settling disputes . . . a Rule 12(b)(6) dismissal is a permissible means of enforcing that forum selection clause."  Jordan Acquisitions Group, LLC v. Adam

Techs., Inc., No. 09-542, 2009 WL 2473987, at *4 (W.D. Pa. Aug. 12, 2009); see Salovaara v. Jackson Nat'l Life Ins. Co., 246 F.3d 289, 299 (3d Cir. 2001).  In Salovaara, the Court stated that while Rule 12(b)(6) was "a permissible means of enforcing a forum selection clause," the Court should transfer rather than dismiss if the forum selection clause points to another federal venue. Id.

## II.  Validity of a Forum Selection Clause

The Court, in deciding whether to enforce a forum selection clause, must first determine "that the clause is valid and the present action falls within [its scope]." Kahn v. Am. Heritage Life Ins. Co., No. 06-1832, 2006 WL 1879192, at *4 (E.D. Pa. June 29, 2006).  Forum selection clauses are presumptively valid and enforceable.  Lester v. Gene Express, Inc., No. 09-403, 2009 WL 3757155, at *2 (D.N.J. Nov. 10, 2009).

To overcome a presumptively valid forum selection clause, the party objecting to it must make a "strong showing" that the clause is unreasonable by demonstrating:  "(1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would . . . result in jurisdiction so seriously inconvenient as to be unreasonable." Moneygram Payment Sys. v. Consorcio Oriental, S.A., 65 Fed.Appx. 844, 846 (3d Cir. 2003) (citation omitted).  To rise to the level of unreasonableness,

the objecting party must show more than "mere inconvenience or additional expense."  Banc Auto, Inc. v. Dealer Servs. Corp., No. 08-3017, 2008 WL 4055830, at *3 (E.D. Pa. Aug. 28, 2008).

## III.  Motion to Transfer Under Section 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a).  To transfer an action, it must be shown that the alternative venue is not only adequate, but also more convenient than the current one.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  District courts have broad discretion to determine whether considerations of fairness favor transfer.  Id. at 883.

Courts balance private and public interests when deciding whether to transfer venue under Section 1404(a).  Id. at 879.  Private interests include a plaintiff's choice of forum, a defendant's preference, whether the claim arose elsewhere, convenience of the parties as indicated by their physical and financial condition, convenience of the witnesses to the extent that they may be unavailable in one forum, and the location of books and records to the extent they could not be produced in alternative fora.  Id.; Yocham v. Novartis Pharms. Corp., 565 F.Supp.2d 554, 557 (D.N.J. 2008).

Courts also consider public interests in the Section 1404(a) analysis, including enforceability of a judgment, practical considerations that could make the trial easy, expeditious or inexpensive, relative administrative difficulty in the two fora resulting from court congestion, local interest in deciding a local controversy, public policies of the fora, and familiarity of the district court with applicable state law.  Jumara, 55 F.3d at 879-80; Yocham, 565 F.Supp.2d at 557.

When determining whether to transfer pursuant to Section 1404, a forum selection clause is generally entitled to "substantial consideration."  Jumara, 55 F.3d at 880.  The presence of a forum selection clause "is a significant factor that figures centrally into the district court's calculus."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  Deference to a plaintiff's choice of forum is inappropriate where the plaintiff has already freely agreed to an appropriate venue.  Jumara, 55 F.3d at 880.  Where there is a valid forum selection clause, the plaintiff must show why the contractual choice of forum is not binding.  Id.  The forum selection clause shifts the burden on a motion to transfer to the plaintiff.  Lester, 2009 WL 3757155, at *5.

## IV.  Motion to Dismiss or Transfer Based on the Forum Selection Clause

Google argues that the parties are bound by a valid, mandatory forum selection clause to litigate in a state or

10

federal court within Santa Clara County, California.  (Google Br. at 5.)  Google states that the parties entered into an AdWords Contract that was finalized on August 22, 2006, and entered into by Parts Geek on August 29, 2006.  (Id. at 6; Joseph Decl. at ¶ 6 & AdWords Contract at 3.)  Paragraph 9 of the AdWords Contract states that "[a]ll claims arising out of or relating to this Agreement or the Google Program(s) shall be litigated exclusively in the federal or state courts of Santa Clara County, California, USA."  (Google Br. at 6.)  Google asserts that this clause is valid and enforceable and covers "any claim between Parts Geek and Google relating to Google's advertising programs--regardless of whether such claim is specifically tied to the [AdWords] Contract."  (Id.)

Parts Geek does not contest the validity of the forum selection clause.  Rather, it contends that the forum selection contract does not apply to its claims because "but for [its negligence claim against Google], the Contract between Plaintiff and Google has no relevance to the allegations of any of the claims asserted in this action.  As a result, the forum-selection clause is neither mandatory and exclusive nor applicable to the Plaintiff's claims."  (Parts Geek Opp'n to Google Mot. at 1-2.) Parts Geek asserts that because its claims do not arise out of its contractual relationship with Google, the forum selection

11

clause should not affect Parts Geek's choice of forum.  (Id. at
3.)

## A.   Applicable Scope of the Forum Selection Clause

Parts Geek argues as an initial matter that the introductory
paragraph of the AdWords Contract limits the applicability of the
terms of the AdWords Contract to "Customer's participation in
'Google's Advertising Program.'"  (Parts Geek Opp'n to Google
Mot. at 4; AdWords Contract at 1.)  Parts Geek contends that
based on this language, "the forum selection clause only applies
when the dispute involves the specific Customer's Participation
in the Program" and is "not applicable where Plaintiff's Claims
arise out of the conduct of a different customer (USAP) which
conduct Google condones and not from Plaintiff's own
participation in the advertising program."  (Parts Geek Opp'n to
Google Mot. at 4.)  However, the Court finds this introductory
language to be a mere statement of the terms to which a customer
was obliged to agree in order to participate in Google's AdWords
Program, which include the subsequent broadly written forum
selection clause.  We thus decline Parts Geek's invitation to
limit the broadly written forum selection clause on the basis of
the "general, boilerplate language" found in the introductory
paragraph.  See Caldwell Trucking PRP v. Rexon Tech. Corp., 421
F.3d 234, 245 (3d Cir. 2005).

Parts Geek next focuses on the forum selection clause itself.  Parts Geek emphasizes that the forum selection clause "states that it applies to 'claims <u>arising out of</u> or <u>relating to</u> this <u>agreement</u> or the Google program(s). . . .'" and suggests that the clause does not extend to its claims arising under the Lanham Act or New Jersey state law, as opposed to the AdWords Contract or its own participation in the AdWords program.  (Parts Geek Opp'n to Google Mot. at 4-5.)

The Court finds that Parts Geek's interpretation of the scope of the forum selection clause is inconsistent with the case law of the United States Court of Appeals for the Third Circuit. In <u>Salovaara</u>, the Third Circuit interpreted the scope of a forum selection clause providing that "any claim related directly or indirectly to this agreement" would be litigated in specific New York venues.  246 F.3d at 300.  The Court found it "quite clear" that the forum selection clause was applicable to non-contractual causes of action under federal securities law and common law fraud, based on alleged acts that took place prior to the formation of the agreement, because the lawsuit involved the same subject matter as the agreement containing the forum selection clause.  <u>Id.</u>

In <u>John Wyeth & Bro. Ltd. v. Cigna Int'l Corp.</u>, 119 F.3d 1070 (3d Cir. 1997), the Third Circuit construed the scope of a forum selection clause that covered "any dispute arising out of

or <u>in relation to</u> this Agreement." <u>Id.</u> at 1072 (emphasis added).
Then-Judge Alito interpreted the term "arising in relation to" to
mean that the dispute has some "logical or causal connection" to
the contract, and rejected the plaintiff's narrow interpretation
that the forum selection clause applied to causes of action
arising from the contract itself. <u>Id.</u> at 1074.  The Court noted
that the plain language of the forum selection clause did not
vest exclusive jurisdiction merely of <u>claims</u> but applied more
broadly to "<u>disputes</u> bearing the requisite relationship to the"
contract.  <u>Id.</u>  The Court thus held the parties "to the sweeping
language that they adopted," distinguishing cases involving forum
selection clauses that did not contain language extending its
reach to disputes "relating" to the contract.  <u>Id.</u> at 1075-76;
<u>see also</u> <u>Crescent Int'l, Inc. v. Avatar Cmties., Inc.</u>, 857 F.2d
943, 944-45 (3d Cir. 1988) (collecting cases demonstrating "a
principle that pleading alternative non-contractual theories is
not alone enough to avoid a forum selection clause if the claims
asserted arise out of the contractual relation and implicate the
contract's terms").

        The forum selection clause at issue here is similar to the
clauses at issue in <u>Salovaara</u> and <u>John Wyeth & Bro.</u> in that it is
broadly written to encompass "all claims . . . relating to . . .
the Google program(s)."  (AdWords Contract at 3 (capitalization
removed).)  We find that Parts Geek's action against Google and

USAP relates to Google's AdWords program and thus falls within the scope of the mandatory forum selection clause.  All but one of Parts Geek's claims are predicated on allegations involving Google's search engine and AdWords program.  (See Compl. at ¶¶ 78-81, 88-91, 99-103, 110-112, 120-123, 132, 134, 139-140, 144-146, 151.)[4]  The forum selection clause itself is contained within the AdWords Contract governing "Google's advertising program(s)," which are at issue here.  (AdWords Contract at 1.)

Parts Geek asserts that it has suffered damages because direct competitors such as USAP can purchase keywords comprising the Parts Geek mark and thus have "force[d] Parts Geek itself to purchase its own Mark from Google to reduce the likelihood that web users will be diverted to other websites."  (Compl. at ¶ 65.) The AdWords Contract concerns the "AdWords online auction-based advertising" that forms part of the basis for Parts Geek's alleged damages.  (See id. & AdWords Contract at ¶ 2.)  Moreover, it appears that Google's defenses will rely on the AdWords contract because that contract prohibits advertisers from engaging in illegal or fraudulent business practices, which would seem to extend to USAP's alleged violations of the Lanham Act, and disclaims liability for "the adjacency or placement of ads

---

[4] Claim 10 asserts computer fraud against USAP only, alleging that USAP violated the Terms of Use of the Parts Geek website and improperly "crawled" the Parts Geek website to take Parts Geek's proprietary data such as pricing.  (Compl. at ¶¶ 155-158.)

within a Program," which goes to Parts Geek's allegations of consumer confusion.  (AdWords Contract at ¶¶ 4-5.)  A defense based on a contract containing a broadly worded forum selection clause can render the dispute subject to that forum selection clause.  See John Wyeth & Bro., 119 F.3d at 1076 & n.5.

Parts Geek has cited no controlling case law supporting its narrower interpretation of the scope of the forum selection clause.  (See Parts Geek Opp'n to Google Mot. at 3-5.)  In light of the controlling Third Circuit precedent applying forum selection clauses to causes of action "relating to" the subject matter of the contract containing the forum selection clause, we must conclude that the forum selection clause applies here.

### B.    Section 1404 Analysis

Even though the Court finds that the forum selection clause is valid and applicable, it must still undergo a Section 1404 analysis.  Lester, 2009 WL 3757155, at *4.  The Court finds that transfer to the Northern District of California is appropriate in light of the substantial consideration given to the forum selection clause.  The existence of a valid forum selection clause shifts the burden to the plaintiff to demonstrate why the clause should not be enforced.  Id. at *5.  Parts Geek has failed to satisfy this burden and the Court finds that the public and private factors also weigh in favor of transfer.

16

### 1.   Parts Geek's Arguments

Parts Geek argues that the private <u>Jumara</u> factors weigh against transfer, contending that New Jersey is "where a substantial part of the events and actions of Defendants giving rise to the claims and the actual unlawful conduct occurred" and that "[t]ortious and other illegal acts were also intentionally and knowingly directed at Parts Geek in New Jersey where Defendants knew Plaintiff was located."  (Parts Geek Opp'n to Google Mot. at 7.)   Parts Geek further notes that both defendants do business in New Jersey.  (<u>Id.</u> at 7-8.)  Finally, Parts Geek suggests that the private factors favor New Jersey because Parts Geek's website is hosted there and relevant documents and witnesses are located there.  (<u>Id.</u> at 8.)

As to the public factors, Parts Geek notes that any judgment would be enforceable in New Jersey; that practical considerations regarding the location of the evidence favor New Jersey; that New Jersey has a substantial interest in protecting its businesses and residents from illegal and tortious activities emanating from other jurisdictions; and that New Jersey judges will be more familiar with the New Jersey law applicable to Parts Geek's common law fraud and Unfair Trade Practice Act claims.  (<u>Id.</u>)

### 2.   Google's Arguments

Google argues that the private factors favor transfer to the Northern District of California.  (Google Br. at 18.)  Google

17

contends that the parties' <u>initial</u> choice of forum is the
Northern District of California, because the AdWords Contract
containing the forum selection clause was executed prior to
bringing the instant action in this Court.  (<u>Id.</u>)  Google next
contends that the claims arose from "the alleged unauthorized use
of the Parts Geek mark as part of Google's AdWords program, which
is operated from Google's headquarters in California."  (<u>Id.</u>)
Google asserts that the Northern District of California better
suits the convenience of the parties because Google is
headquartered there, Parts Geek maintains one of its two main
warehouses in California, and USAP is located in California.
(<u>Id.</u>)  Google notes that relevant documents and witnesses are
located in California.  (<u>Id.</u> at 19.)

Google argues that the public factors also favor transfer.
Any judgment would be enforceable in California.  (<u>Id.</u>)  Google
states that practical considerations favor transfer because "the
majority of the witnesses and evidence will be located in
California."  (<u>Id.</u>)  According to Google, California has a strong
interest in adjudicating this matter because the alleged acts
occurred substantially in California.  (<u>Id.</u>)  Google argues that
"California courts can adequately handle a case of this nature."
(<u>Id.</u> (citing <u>Feldman</u>, 513 F.Supp.2d at 248 ("California courts
have expertise in commercial litigation involving web-based
technology.")).)  Finally, Google argues that public policy is

served by enforcing the forum selection clause by protecting the reasonable expectations of the contracting parties, and that California courts will be more familiar with the California law governing the action as required by the choice of law clause in the AdWords Contract.  (Id.)

### 3.   Private Factors

The private factors relevant to this analysis are the forum preferences of the parties, the convenience of the parties, and the convenience of the witnesses.  Although the plaintiff here brought the action in New Jersey, deference is not given to the plaintiff's forum choice when the plaintiff already agreed to a different venue in a forum selection clause.  Jumara, 55 F.3d at 880.  Despite Parts Geek's contention that a substantial part of the alleged acts occurred in New Jersey, its claims all concern use of the Google AdWords program, "which is operated from Google's headquarters in California."  (Dkt. entry no. 20, Google Reply Br. at 7.)  USAP is headquartered in California, suggesting that its alleged tortious acts occurred there.  Thus, the Court rejects Parts Geek's conclusory statement that a "substantial part of the events and actions . . . giving rise to the claims" occurred in New Jersey merely because the defendants knew Parts Geek was located there.  (Parts Geek Opp'n to Google Br. at 7.) See Feldman, 513 F.Supp.2d at 248.

Parts Geek itself has one of its two main storage facilities in California, and both Google and USAP are headquartered in California, intimating that the convenience of the parties and witnesses favors California as a venue.  Because Parts Geek has not shown that the Northern District of California is an inconvenient forum, and Parts Geek's choice of forum is not entitled to deference due to the forum selection clause, the Court concludes that the private factors weigh in favor of transfer.[5]

### 4.   Public Factors

In evaluating the public factors, the Court must look to practical considerations that would make the trial easy, expeditious or inexpensive and the familiarity of the judge with applicable state law.  The terms of the AdWords Contract specify that California law will govern the contract, but Parts Geek has brought several causes of action under New Jersey law.  However, Parts Geek does not dispute the validity of the choice-of-law provision of the contract.  This factor favors transfer because California law will govern.  See Hoffer v. Infospace.com, Inc., 102 F.Supp.2d 556, 577 (D.N.J. 2000) (finding that likely

---

[5] Parts Geek also has been actively defending itself in a separate action brought against it by USAP in California.  See U.S. Auto Parts Network, Inc. v. Parts Geek, LLC, C.D. Cal. No. 09-4609 (JFW).

applicability of Washington law favors transfer to Western District of Washington).

The Court also considers "practical considerations that would make the trial easy, expeditious or inexpensive." Wayne v. Fuji Photo Film USA, Inc., No. 07-5536, 2008 WL 3832406, at *3 (E.D. Pa. Aug. 14, 2008).  The people and physical apparatuses, such as computer servers, involved in the alleged acts are located in California.

Although New Jersey has an interest in providing a forum for a business operating there to vindicate its rights, Parts Geek does not contend that it will not be able to prosecute its claims in the Northern District of California.  The Court finds that California's interest in deciding this matter is substantial because the alleged wrongful acts occurred there.  Suhre Assocs., Inc. v. Interroll Corp., No. 05-4332, 2006 WL 231675, at *2 (D.N.J. Jan. 31, 2006) (noting that transferee state had "strong interest" in overseeing conduct of defendant located in transferee state).

The Court concludes that the public factors also weigh in favor of transfer.  Accordingly, the part of Google's motion seeking transfer pursuant to 28 U.S.C. § 1404(a) will be granted. The part of Google's motion seeking dismissal of the Complaint based on the forum selection clause will be denied as moot.

**V.    Part of Google's Motion to Dismiss Counts I-III and V-VII**

Google also seeks to dismiss Counts I-III and V-VII of the complaint on the merits, pursuant to 12(b)(6).  (Google Br. at 20-27.)  Google contends that Parts Geek does not own and therefore lacks standing to enforce the Parts Geek mark.  (<u>Id.</u> at 20-23.)  Google also argues that Parts Geek has failed to state a claim for either vicarious infringement (Count III) or trademark dilution (Count V).  (<u>Id.</u> at 25-27.)

Because the Court has determined that transfer of the case to the Northern District of California is appropriate, it will not address the merits of the part of the motion seeking to dismiss Counts I-III and V-VII, but will deny this part of the motion without prejudice.  <u>See</u> <u>Lester</u>, 2009 WL 3757155, at *8 (denying without prejudice alternative motions when the Court granted motion to transfer).

**VI.   USAP's Motion to Dismiss**

USAP moves separately to dismiss Parts Geek's trademark infringement claims, asserting that Parts Geek lacks standing to enforce the Parts Geek mark, and to dismiss the RICO and computer fraud claims for failure to state a claim.  (USAP Br. at 4-8.) In the alternative, USAP joins the part of Google's motion seeking transfer the action to the Northern District of California or dismiss the Complaint, noting that transfer of the

action as against both Google and USAP serves the interests of judicial economy.  (Id. at 1, 9.)

Having determined that transfer of the case is appropriate, the Court will grant the part of USAP's motion seeking transfer, deny as moot the part of USAP's motion seeking dismissal of the Complaint based on the forum selection clause, and deny without prejudice the part of USAP's motion seeking dismissal of the claims asserted against it.

**CONCLUSION**

The Court, for the reasons stated supra, will grant the part of Google's motion seeking to transfer to the Northern District of California, deny without prejudice the part of Google's motion seeking, in the alternative, to dismiss certain claims under Rule 12(b)(6), grant USAP's separate motion to the extent it joins Google's motion to transfer, and deny without prejudice the part of USAP's motion seeking dismissal of the Complaint insofar as asserted against it under Rule 12(b)(6).


        s/Mary L. Cooper
**MARY L. COOPER**
United States District Judge


Dated:    April 1, 2010